IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES, | : | |
| Plaintiff, | : | Criminal No. 2:15-cr-00109-JHS |
| v. | : | |
| DEAN ROSSI, | : | |
| Defendant. | : | |

## DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL

Defendant Dean Rossi hereby moves under Federal Rule of Criminal Procedure 29(a) for entry of a judgment of acquittal. The evidence presented at trial is insufficient as a matter of law to sustain the charges of bank fraud, mail fraud affecting a financial institution, and conspiracy to commit these offenses as contained in the Superseding Indictment. Defendant relies upon and incorporates by reference the brief submitted in support of this motion.

Wherefore, defendant requests that the Court enter judgment of acquittal on Counts 1, 2, 3, 5, and 7 of the Superseding Indictment.

Dated: May 22, 2018

/s/Edward F. Borden, Jr.
Edward F. Borden, Jr.
EARP COHN P.C.
123 South Broad Street, Ste. 1030
Philadelphia, PA 19109
(215) 963-9520
(856) 385-7060 (direct fax)
Counsel for Defendant Dean Rossi

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES, | : |
| Plaintiff, | : Criminal No. 2:15-cr-00109-JHS |
| v. | : |
| DEAN ROSSI, | : |
| Defendant. | : |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL

Defendant Dean Rossi hereby submits this brief in support of his motion for a judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure.

## STATEMENT OF RELEVANT FACTS

The government charged defendant Dean Rossi in the Superseding Indictment with the following offenses: mail fraud affecting a financial institution, pursuant to 18 USC § 1341, as to Nova Bank (Count 2); bank fraud, pursuant to 18 USC § 1344, as to Nova Bank, First Cornerstone Bank, and Leesport (Vist) Bank (Counts 3, 5, and 7, respectively); and conspiracy, pursuant to 18 USC § 1349, to commit mail fraud as to Nova Bank, to commit bank fraud as to Nova Bank and Leesport (Vist) Bank (Count 1).

The factual allegations in the Superseding Indictment and the trial evidence may fairly be categorized into one of three general real estate transactions. The first transaction occurred in early 2007 and involved a loan from Nova Bank to R&S Real Estate, LLC ("R&S") for the purpose of refinancing real estate ("Nova Deal"). The second transaction occurred in the second half of 2007 and involved a loan from First Cornerstone Bank ("FCB") to St. Chalres Place, LLC

("St. Charles") for the purpose of purchasing real estate ("FCB Deal"). The third transaction occurred in the beginning of 2008 and involved a loan from Leesport (Vist) Bank to HB Holding Company, LLC ("HB") for the purpose of purchasing real estate ("Vist Deal").

In general, viewing the trial record most favorably to the government under Rule 29, it consisted of evidence that that false statements and representations were made to financial institutions at the time period when the loan applications were submitted by R&S, St. Charles, and HB; that at closing on each of the transactions, preexisting encumbrances on the collateral pledged pursuant to the loans were not paid and satisfied to provide the financial institutions with first priority liens pursuant to the settlement statements; and that premium payments were subsequently made to the banks in accordance with the loans for a number of years after closing.

**ARGUMENT**

Pursuant to Rule 29(a), "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." The Court may reserve decision of the motion but must "decide the motion on the basis of the evidence at the time the ruling was reserved." *Id.* at 29(b).

In deciding a motion for judgment of acquittal, the Court must determine whether, "upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Phifer*, 400 F. Supp. 719, 724 (E.D. Pa. 1975) (citation omitted), *aff'd*, 532 F.2d 748 (3rd Cir. 1976). A Rule 29 motion places the burden on the defendant to show the insufficiency of the evidence. *See United States v. Dent*, 149 F.3d 180, 187 (3rd Cir. 1998) (citation omitted); *United States v. Hitchens*, 2001 U.S. Dist. LEXIS 16916 (E.D. Pa. 2001).

To find the defendant guilty of bank fraud, 18 USC § 1344, the government must prove beyond a reasonable doubt that a scheme to defraud that targeted money or property owned or under the control of a financial institution existed; that the scheme included a false statement or representation that was material; that the financial institution was federally insured; that defendant engaged in the scheme knowingly; and that the defendant possessed the specific intent to defraud the financial institution. *See, e.g., Loughrin v. United States*, 134 S. Ct. 2384, 2389-90 (2014); *see also Neder v. United States*, 527 U.S. 1, 25 (1999); *United States v. Fattah*, 858 F.3d 801 (3d Cir. 2017). The scheme must be one to deceive the bank and deprive it of something of value. *Shaw v. United States*, 137 S. Ct. 462 (2016).

To find the defendant guilty of mail fraud, 18 USC § 1341, the government must prove beyond a reasonable doubt that a scheme to defraud existed; the defendant participated in that particular scheme charged with the specific intent to defraud; and the U.S. mails were used in furtherance of the fraudulent scheme. *See, e.g., United States v. Kemp*, 500 F.3d 257, 279 (3rd Cir. 2007); *see also United States v. Riley*, 621F.3d 312 (3rd Cir. 2010) (stating elements).

An element common to both mail fraud affecting a financial institution and bank fraud is the existence of a scheme to defraud. The courts have explained that a scheme to defraud is generally a plan of action the purpose of which is to deceive another to obtain something of value. *See, e.g., United States v. Holdblatt*, 813 F.3d 619, 624 (3rd Cir. 1987). The plan must involve some sort of misrepresentation reasonably calculated to deceive a person of ordinary prudence. *See United States v. Pearlstein*, 576 F.2d 531, 535 (3rd Cir. 1978).

To allow a jury to return a verdict of guilty, the government must introduce evidence sufficient to lead to the conclusion that the defendant engaged in the scheme knowingly, meaning he was conscious and aware of his actions and did not act because of ignorance,

mistake, or accident. *See United States v. Weiler*, 458 F.2d 474, 475 (3rd Cir. 1974). The evidence must show that the defendant willfully participated in the scheme to defraud—namely, he must have voluntarily and intentionally violated a known legal duty, meaning he acted with the bad purpose to disobey or disregard the law. *See Bryan v. United States*, 524 U.S. 184, 191 n.13, 196 (1998).

When the scheme to defraud charged in the indictment involves multiple layers of deception or misstatement, the government must present sufficient evidence to allow the jury to conclude beyond a reasonable doubt that the defendant "acted knowingly . . . with respect to the overarching fraudulent scheme—that is, the particular illicit enterprise charged in the indictment." *See United States v. Dobson*, 419 F.3d 231, 237 (3rd Cir. 2005) (citations omitted); *see also United States v. Pearlstein*, 576 F.2d 531, 537, 540-41 (3rd Cir. 1978) ("the evidence must indicate that the defendants had knowledge of the fraudulent nature of the operation and willfully participated in the scheme with the intent that its illicit objectives be achieved"); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 908-09 (3 rd Cir. 1991) ("defendants must have knowledge of the illicit objectives of the fraudulent scheme and willfully intend that those larger objectives are achieved").

A conspiracy to commit bank fraud or mail fraud requires the government to prove that the defendant possessed knowledge of the facts that constitutes the offense and of the illicit purpose of the conspiracy. *See, e.g., United States v. Idowu*, 157 F.3d 265, 267 (3rd Cir. 1998) (explaining, in the context of a challenge to the sufficiency of the evidence for a conspiracy conviction, that "the government is obliged to prove beyond a reasonable doubt that the defendant had knowledge of the particular illegal objective contemplated by the conspiracy").

The Third Circuit has recognized that conspiracy cases are ripe for Rule 29 motions because there is a tendency for finders-of-fact to believe a defendant "must have been involved in a conspiracy, once evidence has been presented of some questionable acts . . . ." *United States v. Samuels*, 741 F.2d 570, 574-75 (3rd Cir. 1984); *see also United States v. Coleman*, 811 F.2d 804, 807 (3rd Cir. 1987) (affirming acquittal of defendant, holding evidence at trial was circumstantial and insufficient to prove the intent required to convict). Courts must give "close scrutiny" to the sufficiency of the government's evidence in a conspiracy case because "slight evidence of a defendant's connection with a conspiracy is insufficient to support a guilty verdict." *Coleman*, 811 F.2d at 807, 808; *see also Samuels*, 741 F.2d at 575 ("guilt must remain personal and individual"). Conspiracy cannot be proven "by piling inference upon inference" where those inferences do not logically support the ultimate finding of guilt. *See Coleman*, 811 F.2d at 808.

A common element of bank fraud, mail fraud affecting a financial institution, and conspiracy to commit these offenses is the specific intent to defraud. To allow a jury to return a verdict of guilty, the government must present sufficient evidence to show beyond a reasonable doubt that the defendant possessed the intent to defraud the financial institution **at the same time** he committed the alleged unlawful act. *See United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 653, 658-662 (2nd Cir. 2016) (holding the criminal fraud statute incorporates the common law fraud requirement that the defendant must possess the intent to defraud at the same time he commits the unlawful act, not at some later time).

In the *Countrywide* case, the court addressed at what point a breach of contract becomes criminal fraud under circumstances in which the defendants had sold poor-quality mortgages to government-sponsored entities. *Id.* at 652. The court explained that when considering whether a

5

breach of contract (such as false representation or false promise) is criminal fraud, courts must look to "*when* the representations were made and the intent of the promisor *at that time*." *Id.* at 658 (emphasis in original). In *Countrywide*, the government presented evidence that key individuals in the bank were informed of the poor quality of the investments and internal quality control reports indicated the problems with the investments, yet the bank sold them to the government-sponsored entities despite contrary representations of investment quality contained in the governing agreement. *Id.* at 654. Defendants contended that they only intended to breach a contract when they sold mortgages that they knew were not of the quality promised in their contracts but did not intend to commit criminal fraud. *Id. at 652-53*. On appeal, the court reversed and agreed with defendants' argument. The appellate court concluded that the evidence at trial failed "to demonstrate the contemporaneous fraudulent intent necessary to prove a scheme to defraud through contractual promises." *Id.* at 653. Specifically, the court reasoned that the false representations were included in the contracts, so to prove criminal fraud, as opposed to breach of contract, the government had to present sufficient evidence to show beyond a reasonable doubt that the defendants knew of the false representation and that the defendant intended not to perform under the agreement at the same time the contract was signed. *Id.* at 657. The contemporaneous fraudulent intent principle is historically required under the common law to prove fraud. *Id.* at 659.

The holding in the *Countrywide* case is based on Supreme Court precedent, and it therefore should be followed by this Court. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992) (statutes employing common-law terms are presumed "unless the statute otherwise dictates, . . . to incorporate the established meaning of these terms") (internal quotation marks omitted); *Neder v. United States*, 527 U.S. 1, 21, 25 (1999) (holding scheme to defraud

requires proof—as at common law—that the misrepresentations were material, notwithstanding the fact that a solely "natural reading of the full text" would omit such an element.

Here, the Court should grant the defendant Rossi's motion for judgment of acquittal and enter a verdict of not guilty on all the conspiracy, bank fraud, and mail fraud affecting a financial institution Counts charged in the Superseding Indictment. No reasonable jury could conclude, based on the trial record, that the overarching scheme to defraud as charged in the Superseding Indictment existed at the time of the alleged false statement, nor that defendant Rossi acted with requisite *mens rea* at the specific time the defendant allegedly committed the unlawful acts. Namely, the trial evidence is insufficient to allow a reasonable juror to conclude beyond a reasonable doubt that at the time the defendant submitted loan applications, he possessed the specific intent to defraud the banks and knowingly enter into the overarching scheme to defraud as charged.

For each transaction, no evidence was introduced to show that—at the time the loan was requested—the defendant intended to breach the terms of the loan agreement by failing to provide the banks with a first-priority mortgage on the collateral pledged, which would have allowed the banks to collect all the loan proceeds. At the time of the loan applications, the government did not present sufficient evidence to show that the defendant knew how much he would receive from the banks of loan proceeds. When the defendant requested the loans, no evidence showed that he knew the appraisal value of the collateral properties, which ultimately dictated the amount of the loan proceeds. Similarly, the government did not present evidence to show that the defendant had knowledge of the full amount of encumbrances on the collateral properties at the specific time the defendant requested the loans. The properties were all under

7

the control of others—Anthony Serrano in the Nova Deal, Milton McIntyre in the FCB Deal, and George Abbott in the Vist Deal.

The government relies heavily on the settlement statements, which the settlement agent involved in each transaction created, Otis Johnson and Francis Dowd. The government presented evidence at trial indicating that the settlement statements represented that money would be used for one purpose and then evidence indicating that the title agents diverted the money held in their respective escrow accounts for a different purpose, contrary to the settlement statements. However, as a legal matter, the settlement statements may not be considered representations or statements by the defendant at all. The legal purpose—and only purpose—for the settlement statements is a unilateral communication from the settlement agent to the respective buyer or seller to advise the charges, fees, and costs—it is not a statement to lenders. *See* Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 USC 2601, 2603 (2007 and 2008); 24 CFR 3500.8, 3500 (Appx. A – Instructions). RESPA and the corresponding regulations state, in pertinent part, the following:

> "The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country."
> 
> 12 USC 2601(a) (2007 and 2008)
> 
> "It is the purpose of this Act to effect certain changes in the settlement process for residential real estate that will result . . . in more effective advance disclosure to home buyers and sellers of settlement costs."
> 
> 12 USC 2601(b)(1) (2007 and 2008)

> "The Secretary . . . shall develop and prescribe a standard form for the statement of settlement costs which shall be used. . . as the standard real estate settlement form in all transactions in the United States which involve federally related mortgage loans. Such form shall conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement and shall indicate whether any title insurance premium included in such charges covers or insures the lender's interest in the property, the borrower's interest, or both."

12 USC 2603(a) (2007 and 2008).

Both RESPA and the corresponding regulations make clear that the information contained in the settlement statement is not a statement or representation from the buyer or borrower to the seller or lender:

> "Nothing in this section may be construed to require that that part of the standard form which relates to the borrower's transaction be furnished to the seller, or to require that that part of the standard form which relates to the seller be furnished to the borrower."

12 USC 2603(a) (2007 and 2008).

> "Lines and columns in Section J which relate to the Borrower's transaction may be left blank on the copy of the HUD-1 which will be furnished to the Seller. Lines and columns in Section K which relate to the Seller's transaction may be left blank on the copy of the HUD-1 which will be furnished to the Borrower."

24 CFR 3500 (Appendix A – Instructions).

The settlement statement is a document that must be created by the settlement agent, not the buyer, seller or borrower. The settlement agent has an obligation to inform the respective buyer, seller and borrower of the costs, fees, and charges only.

> "The settlement agent shall use the HUD-1 settlement statement in every settlement involving a federally related mortgage loan in which there is a borrower and a seller."

24 CFR 3500.8(a) (2007 and 2008).

> "The settlement agent shall complete the HUD-1 or HUD-1A in accordance with the instructions set forth in Appendix A."

24 CFR 3500.8(b) (2007 and 2008).

> "The settlement agent shall complete the HUD-1 to itemize all charges imposed upon the Borrower and the Seller by the Lender and all sales commissions, whether to be paid at settlement or outside of settlement, and any other charges which either the Borrower or the Seller will pay for at settlement.

24 CFR 3500 (Appendix A – Instructions).

Considering both the *Countrywide* case, 822 F.3d at 653, 658-662, in which the court held that the government must present sufficient evidence of the defendant's intent to defraud contemporaneous with the making of the false statements, as well as *Dobson*, 419 F.3d at 237; *Pearlstein*, 576 F.2d at 537, 540-41, and *Genty*, 937 F.2d at 908-09, in which the courts held the government must prove that the defendant possessed knowledge of the "larger" and "overarching" scheme to defraud and the objectives of that scheme as charged, the government has failed to present sufficient evidence here. No evidence is in the record to allow a reasonable jury to conclude beyond a reasonable doubt that at the specific time the alleged false statements were made to the lenders, that the defendant possessed the knowledge about or intent to avoid paying preexisting encumbrances, divert money, and prevent the lenders from having a first-priority mortgage to collect on the collateral pledged. Therefore, the Court should enter judgment of acquittal in defendant's favor as to all conspiracy, bank fraud, and mail fraud Counts in the Superseding Indictment.

## CONCLUSION

The Court should grant defendant Rossi's motion for a judgment of acquittal on Count 1,2,3,5,and 7 related to bank fraud, mail fraud affecting a financial institution, and conspiracy to commit these offenses because the government has failed to present evidence sufficient to allow a reasonable juror to conclude beyond a reasonable doubt that at the specific time that the alleged false statements or representations were made to the financial institutions, as charged in the Superseding Indictment, that a scheme to defraud existed or that defendant possessed the *mens rea* to engage knowingly in a scheme to defraud with the specific intent to defraud the banks.

Dated: May 22, 2018                                /s/ Edward F. Borden, Jr.
                                                                       Edward F. Borden, Jr.